253 F.3d 410 (9th Cir. 2001)
 WAYNE BLOCK; ANICK CHARRON; EUGENE GREENE; ROBERT B. HYDE; DAVID G. LEATHERMAN; SHU TAN, PLAINTIFFS-APPELLEES,
v.
CITY OF LOS ANGELES, DEFENDANT-APPELLANT, AND DEPARTMENT OF WATER AND POWER, DEFENDANT.
WAYNE BLOCK; ANICK CHARRON; EUGENE GREENE; ROBERT B. HYDE; DAVID G. LEATHERMAN; SHU TAN, PLAINTIFFS-APPELLEES,
v.
CITY OF LOS ANGELES, DEFENDANT, AND DEPARTMENT OF WATER AND POWER, DEFENDANT-APPELLANT.
WAYNE BLOCK; ANICK CHARRON; EUGENE GREENE; ROBERT B. HYDE; DAVID G. LEATHERMAN; SHU TAN, PLAINTIFFS-APPELLEES-CROSS-APPELLANTS,
v.
CITY OF LOS ANGELES; DEPARTMENT OF WATER AND POWER, DEFENDANTS-APPELLANTS-CROSS-APPELLEES.
 Nos. 99-56061, 99-56062, 99-56107
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 12, 2000
Filed June 6, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Robert Cramer, City of Los Angeles Department of Water and Power, Los Angeles, California, for the defendants-appellants-cross-appellees.
 Stuart Libicki, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, California, for the plaintiffs-appellees-cross-appellants.
 Appeal from the United States District Court for the Central District of California A. Howard Matz, District Judge, Presiding. D.C. No. CV-91-05461-AHM-03; D.C. No. CV-91-05461-AHM; D.C. No. CV-91-05461-AHM-4
 Before: Warren J. Ferguson, Andrew J. Kleinfeld, and Michael Daly Hawkins, Circuit Judges.
 
 Hawkins, Circuit Judge
 
 1
 The City of Los Angeles (the "City") and the City's Department of Water and Power (the "DWP") (collectively, the "Defendants") appeal from a grant of summary judgment to the plaintiff-employees on their Fair Labor Standards Act ("FLSA") claim for overtime wages. The Defendants contend the employees are exempt from the overtime requirements of the FLSA because they are professional, executive or administrative employees who were at all times compensated on a salary basis. The employees do not dispute that their duties were executive, professional or administrative, but argue that they were not compensated in a manner consistent with a salary basis because they were subject to partial week suspensions for violations of rules unrelated to safety.
 
 I. BACKGROUND REGULATIONS AND CASELAW
 A. The Salary Basis Test
 
 2
 Under Wage and Hour Administration regulations, an employee is considered to be paid on a salary basis if his pay "is not subject to reduction because of variations in the quality or quantity of the work performed." 24 C.F.R.§§ 541.118(a). The salaried status of an employee, however, is not affected by "penalties imposed in good faith for infractions of safety rules of major significance." 29 C.F.R. §§ 541.118(a)(5). Nor does a suspension of a salaried employee for a full week change the salaried status, because the policy is"subject to the general rule that an employee need not be paid for any workweek in which he performs no work." 29 C.F.R. §§ 541.118(a). Thus, a disciplinary suspension of less than a full workweek for reasons other than major safety violations can result in a failure to meet the "salary basis test" required for overtime exemption.
 
 B. Auer v. Robbins
 
 3
 In Auer v. Robbins, 519 U.S. 452 (1997), the Supreme Court addressed the proper application of this salary basis test to employees of the St. Louis Metropolitan Police Department who sought overtime wages under the FLSA. Id. at 455. The employees claimed their pay was "subject to" reduction for disciplinary infractions because the department manual provided for partial week suspensions, even though there had been only one instance in which a purportedly salaried employee's pay was so reduced. Id. at 462.
 
 
 4
 At the Court's request, the Secretary of Labor filed an amicus brief regarding its interpretation of the salary basis regulation. Id. at 461. The Secretary took the position that an employer cannot assert overtime exempt status when"employees are covered by a policy that permits disciplinary or other deductions in pay `as a practical matter.' " Id. This test is satisfied if there is (1) "an actual practice of making such deductions" or (2) "an employment policy that creates a `significant likelihood' of such deductions." Id. In the absence of actual deductions, a clear policy is required that" `effectively communicates' that deductions will be made in specific circumstances." Id.
 
 
 5
 In Auer, there had been only one actual deduction under what the Court called "unusual circumstances. " Id. at 462. Therefore the Court focused on the policy prong of the test, and determined that the police department manual did not effectively communicate that pay deductions were likely for similarly situated employees. Id.
 
 
 6
 The employees here are governed by the Los Angeles City Civil Service Commission's "Guide to Disciplinary Standards." The guide lists various offenses and sets forth suggested actions for the first, second and third offenses. Suspensions are suggested for some offenses, including ones that are not related to violations of major safety rules. The guide does not require suspension for certain offenses and does not distinguish between salaried and hourly employees. On March 12, 1993, the Mayor of Los Angeles issued a directive to the heads of all City departments, prohibiting the suspension of "any exempt employee, whose salary is above the time and one-half cap . . . for less than a workweek, unless such discipline is related to a major violation of a safety rule." Reviewing the City's disciplinary guide in light of Auer, the district court concluded that there was not an employment policy which created a significant likelihood of disciplinary deductions. This ruling has not been appealed.
 
 
 7
 C. "Actual Practice"
 
 
 8
 The district court did, however, find that the first prong of Auer had been satisfied because both the City and the DWP had an "actual practice" of making improper disciplinary deductions. This ruling was based on the court's conclusion that there had been eight impermissible suspensions by the City over a six-year period, and six by the DWP during the same time frame.
 
 
 9
 Our few decisions on the disciplinary suspension issue since Auer focus on the "policy" prong of Auer or dismiss the "actual practice" argument with little discussion. See, e.g., McGuire v. City of Portland, 159 F.3d 460 (9th Cir. 1998) ("actual practice" issue not raised); Childers v. City of Eugene, 120 F.3d 944, 947 (9th Cir. 1997) (one isolated suspension not an "actual practice"); Stanley , 120 F.3d 179, 184 (9th Cir. 1997) (no actual suspensions). Similarly, most cases from other circuits have involved only one or two isolated suspensions or deductions, and therefore also dismissed any "actual practice" argument without significant analysis. See, e.g., Spradling v. City of Tulsa, 198 F.3d 1219, 1224 (10th Cir. 2000) (no actual deductions in pay); Aiken v. City of Memphis, 190 F.3d 753, 762 (6th Cir. 1999) (one actual suspension); West v. Anne Arundel County, 137 F.3d 752, 762 (4th Cir. 1998) (no actual suspensions); Ahern v. County of Nassau, 118 F.3d 118, 120-21 (2d Cir. 1997) (one actual suspension).
 
 
 10
 Our recent case decision in Klem v. County of Santa Clara, 208 F.3d 1085 (9th Cir. 2000), however, may shed some light on the "actual practice" concept. There the district court found the employer had an "actual practice" of making impermissible deductions based on fifty-three disciplinary suspensions over a six-year period. 208 F.3d at 1088. Although the sole issue on appeal in Klem appears to have been whether the "window of correction" was available to correct these suspensions, rather than the propriety of the "actual practice" determination in the first place, these issues become intertwined by the decision in Klem. Relying in large part on an amicus brief filed by the Secretary of Labor, Klem suggests that there is only an "actual practice" if the employer's practices reflect an objective intention not to pay a class of employees on a salaried basis. See id. at 1091; see also id. at 1093-94 (intentional violations of the FLSA "can be rectified through the window of correction, so long as those violations do not amount to a pattern or practice of violations demonstrating an intention not to pay employees on a salaried basis") (emphasis added); id. at 1095 ("The question here is whether Defendant's improper suspensions of those employees whom it classified as exempt demonstrate that it lacked the intent to pay such employees on a salaried basis.") (emphasis added).
 
 
 11
 Relying on Klem and on yet another amicus brief filed by the Secretary, the Second Circuit has similarly noted that "there can be no bright-line test for determining what constitutes an `actual practice' of making impermissible deductions," stressing that the object of the inquiry must be "whether the employer's practices reflect an`objective intention' to pay its employees on a salaried basis." Yourman v. Giuliani, 229 F.3d 124, 130 (2d Cir. 2000) (citing Klem, 208 F.3d at 1091), cert. denied, 121 S. Ct. 1362, 149 L.Ed.2d 291 (2001).
 
 
 12
 In some cases, the number of suspensions alone may be sufficient indicia of the employer's intent to resolve the "actual practice" determination. For example, the number may be so small that there would be no way to say that the employer meant to treat an entire class of employees as hourly rather than salaried by virtue of one or two isolated suspensions. See Paresi v. City of Portland, 182 F.3d 665, 668 (9th Cir. 1999) (two improper suspensions not sufficient to constitute an "actual practice"); Childers, 120 F.3d at 947 (one suspension); see also Carpenter v. City and County of Denver, 115 F.3d 765, 767 (10th Cir. 1997) (two suspensions). In other cases, however, a number of factors may need to be considered to resolve the question of the employer's objective intentions. See DiGiore v. Ryan, 172 F.3d 454, 464 (7th Cir. 1999) (five suspensions made over several years and under unusual circumstances did not constitute an "actual practice"); see also Yourman, 229 F.3d at 129-131 (remanding for district court to consider circumstances surrounding twelve suspensions and noting Secretary's position that "actual practice" is usually a factual inquiry that is "best left to the trial court").
 
 
 13
 To determine whether the employees were entitled to summary judgment here, we must determine how many improper suspensions actually occurred and whether there were any extenuating circumstances surrounding such suspensions.
 
 II. STANDARD OF REVIEW
 
 14
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). Viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate only if no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). When the moving party does not bear the ultimate burden of persuasion at trial, the moving party must show that the nonmoving party does not have enough evidence to carry its burden at trial. Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). Evidentiary decisions made in the context of summary judgment motions are reviewed for an abuse of discretion. Maffei v. Northern Ins. Co., 12 F.3d 892, 897 (9th Cir. 1995).
 
 III. THE CITY OF LOS ANGELES
 A. Facts
 
 15
 The parties stipulated to the bulk of the material facts. The plaintiffs employed by the City were members of six different bargaining units, all of which were represented by the Engineers and Architects Association ("EAA"). There were over 5,500 employees in the six bargaining units, but only about 600 who were purportedly paid on a salary basis. Over a six-year time frame, the City imposed partial week disciplinary suspensions on nineteen employees who were members of the same EAA bargaining units as the plaintiffs. These nineteen employees were purportedly paid on a salary basis and thus did not receive time and a half for hours worked in excess of a normal workweek.
 
 
 16
 In opposition to the employees' motion for summary judgment, the City provided an affidavit by the City's administrative analyst, Royce Menkus. Menkus's affidavit explains that he contacted various City departmental personnel officers to learn more about the stipulated suspensions, and the affidavit summarizes the results of his inquiries. According to Menkus's declaration, nine of the suspended employees had actually been paid hourly at the time of their suspensions and received overtime compensation of 1.5 times their hourly rate. In addition, Menkus reported, one employee was suspended for violation of a major safety rule, another was subsequently reimbursed for the suspension, and yet another was salaried at the time of the suspension, but disciplined for an act which occurred while paid on an hourly basis.
 
 
 17
 The employees objected to the Menkus declaration, claiming that it lacked proper foundation and that the information contained in it was inadmissible under Federal Rules of Evidence 802, 901 and 1002. While not explicitly ruling on the employees' objection, the district court did consider information from the declaration when ruling on the summary judgment motion.
 
 
 18
 The district court disregarded eleven of the nineteen disciplinary suspensions, finding they were consistent with the salary basis regulations because nine employees were paid on an hourly basis at the time they were suspended, one was suspended for a major safety violation, and one was suspended but later reimbursed. The court thus concluded that there were eight suspensions by the City that were inconsistent with salaried status, and that this constituted an "actual practice" of making impermissible disciplinary deductions from purportedly salaried employees. The court further held that because the City had engaged in an "actual practice," it could not correct the improper suspensions through the "window of correction" in 29 C.F.R. §§ 541.118(a)(6), and granted summary judgment to the employees on the issue of overtime liability under 29 U.S.C. §§ 207(a).
 
 
 19
 The parties then stipulated to the amount of overtime compensation due, but could not agree whether the employees were entitled to liquidated damages pursuant to 29 U.S.C. §§ 260. The employees moved for summary judgment on the liquidated damages claim, which the district court granted. The City appeals from both the liability and damages rulings.
 
 B. Suspensions of More than a Week
 
 20
 The City argues that the district court improperly counted the suspensions of four employees who were suspended for more than a week. The City argues that it is only suspensions of less than a week that are problematic under the regulations.
 
 
 21
 The district court dismissed this argument as without merit, relying on the provision in the salary basis regulation which indicates that a salaried employee "must receive his full salary for any week in which he performs any work, without regard to the number of days or hours worked." 29 C.F.R. §§ 541.118(a). Under the district court's interpretation, if an employee were suspended from Monday to Friday of one week and Monday and Tuesday of the next week, the employee would perform work on Wednesday, Thursday and Friday of the second week and be entitled to full salary for the second week as a result.
 
 
 22
 Although we have never explicitly addressed the propriety of disciplinary suspensions of more than a week, we have suggested that only even-week suspensions comply with the salary basis test. See Stanley, 120 F.3d at 184 (describing "suspensions in full-week increments" as consistent with salaried status); see also Paresi, 182 F.3d at 667 n.1 (noting that two supposedly improper suspensions were actually"week long Monday-to-Friday suspensions"); Childers , 120 F.3d at 945 n.1 ("salaried employees may be suspended without pay for the period of a week but must be compensated where they are suspended for a period of less than a week"). In light of these precedents, we agree that the district court correctly surmised the effect of section 541.118(a). This interpretation also appears to be consistent with the Secretary's viewpoint as set forth in its amicus brief in Auer:
 
 
 23
 The Secretary does not consider unpaid disciplinary suspensions of a full-week pay period to violate the salary basis rule, because the Secretary has adopted a general policy, reflected in 29 C.F.R. §§ 541.118(a), not to question the salaried status of an employee who receives no pay in a week in which the employee performs no work.
 
 
 24
 1996 WL 595843 at *18 n.5 (emphasis added) (the"Amicus Brief"). We agree with the district court that it is the partial-week aspect of the suspensions that creates a problem under the salary basis regulations, whether they are for more or less than full week increments.
 
 
 25
 On the other hand, it is also easy to see where the City's confusion might arise. Until now, no case has specifically addressed disciplinary suspensions of more than a full week. The cases which have addressed partial-week suspensions tout the problem of suspensions of less than a week, which could create a negative implication that suspensions of a week or more are acceptable. Cf. Childers, 120 F.3d at 946 n.1. Likewise, in her Amicus Brief, the Secretary constantly refers to suspensions of "less than a week" as problematic. 1996 WL 595843 at *6 ("an employee suspended without pay for less than one week . . . would be classified as nonsalaried"); id. at *13 ("[t]he rule against disciplinary deductions of less than one week's pay is an integral component of the test"); id. at *14-15 (showing of actual deductions unnecessary if employer communicates that "deductions will be made for disciplinary suspensions of less than one week"); and id. at *15 (penalties can be imposed "without running afoul of the prohibition against disciplinary deductions of less than one week").
 
 
 26
 The Secretary may have chosen suspensions of less than a week simply as an illustrative example to contrast against full-week suspensions. But it may also be that only those suspensions of less than a week are troubling to the Secretary. There are no other regulations pertaining to this issue; indeed, the entire "actual practice" concept has been developed by caselaw and aided by the briefing of the Secretary. See, e.g., Auer, 519 U.S. at 461 (relying on amicus brief of Secretary of Labor); Klem, 208 F.3d at 1091 (same); Yourman, 229 F.3d at 130 (same). Thus, the Auer Amicus Brief is likely an informative source for practitioners struggling with the contours of the salary basis regulations.
 
 
 27
 Although we agree with the district court that suspensions of more than a week run afoul of the salary basis test, we do not find the City's position as wholly unreasonable as the district court believed it to be. It appears that the City believed these suspensions to be permissible under the FLSA,[1] and that the law was not altogether clear on the subject at the time.
 
 
 28
 If there were, as the district court concluded, only eight improper suspensions over six years, with fully half of those occurring as the result of an erroneous but not absurd interpretation of the law, we would be hesitant to agree with the district court that the employees were entitled to summary judgment on this issue. In fact, other circuits have upheld summary judgment in favor of the employer in somewhat similar circumstances. DiGiore, 172 F.3d at 464-64 (affirming grant of summary judgment to employer despite five improper suspensions because suspensions were infrequent and under unusual circumstances); cf. Davis v. City of Hollywood, 120 F.3d 1178, 1180 (11th Cir. 1997) (four suspensions for less than a week did not prevent employer from availing itself of window of correction).
 
 
 29
 The employees, however, contend that it was error for the district court to have considered the Menkus declaration, and that if the declaration were disregarded, the remaining stipulated facts would provide an alternative ground for affirming the grant of summary judgment in their favor. We therefore turn to the merits of their evidentiary objection to the declaration.
 
 C. The Menkus Declaration
 
 30
 As noted above, the employees argued that the Menkus declaration lacked foundation and that the information it contained was inadmissible under Federal Rules of Evidence 802, 901 and 1002. To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). With respect to evidence submitted by affidavit, Rule 56(e) requires that the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).
 
 
 31
 The Menkus affidavit appears inadequate under Rule 56(e). Not made on personal knowledge, it did not set forth facts that would be admissible in evidence. It is clear from the affidavit that Menkus was not personally involved in any of the disciplinary suspensions, and that he did not personally review any business records containing information regarding such disciplinary suspensions. Menkus instead relied on information from (unsworn) departmental personnel officers, and the source of these officers' information is unclear. Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay. Fed. R. Evid. 802. It was thus an abuse of discretion to consider the information contained in the Menkus declaration.[2]
 
 D. Actual Practice
 
 32
 It turns out that disregarding the Menkus declaration leads us to the same conclusion as the district court. Without it, we are left with the City's stipulation that it suspended nineteen purportedly salaried employees for disciplinary reasons. Six of these suspensions were for more than a week.[3] Even if we ignore those six suspensions, we are still left with thirteen improper suspensions, most of them occurring after the mayor's directive not to suspend salaried employees for less than a week.[4] Thus, even viewing the evidence in the light most favorable to the City as the non-moving party, we find that the stipulated facts establish "a pattern or practice of violations demonstrating an intention not to pay employees on a salaried basis." Klem, 208 F.3d at 1093-94. As such, the City could not bear its burden of proving that the employees were exempt from FLSA overtime requirements, and summary judgment in favor of the employees was appropriate.
 
 E. Window of Correction
 
 33
 Although the City appealed the district court's determination that it could not avail itself of the "window of correction" contained in 29 C.F.R. §§ 541.118(a)(6),[5] while this appeal was pending, we foreclosed this argument with our decision in Klem. 208 F.3d at 1091-94 (accepting Secretary's interpretation that window of correction is not available when there is an actual pattern of practice of making impermissible disciplinary deductions).[6] The window of correction is therefore not available to the City, which engaged in an "actual practice" of making improper disciplinary deductions.
 
 F. Liquidated Damages
 
 34
 The City also appeals the district court's determination that the employees are entitled to liquidated damages. If an employer has violated the FLSA, the employees are entitled to liquidated damages unless the employer meets its burden of proving both that the employer acted in subjective good faith and that it had reasonable grounds for believing it was not violating the FLSA. 29 U.S.C. §§ 260; 29 C.F.R.§§ 790.22(b). The statute thus establishes a test with both subjective and objective components. Bratt v. County of Los Angeles, 912 F.2d 1066, 1071-72 (9th Cir. 1990). The City's subjective good faith is not at issue.
 
 
 35
 We agree with the district court that the City did not present sufficient evidence to survive summary judgment on objective good faith. As noted above, a few suspensions were for more than one week, and these were perhaps the result of an erroneous but not completely unreasonable interpretation of the salary basis regulations and developing caselaw. The City, however, did not explain how or why it believed it was complying with the FLSA with respect to any of the remaining thirteen suspensions. Because the City did not show that a genuine issue existed with respect to the objective component, the district court properly awarded summary judgment to the employees on this issue.
 
 IV. THE DWP
 A. Facts
 
 36
 Seventeen plaintiffs were employed by the DWP. These plaintiffs were represented by the EAA in a single bargaining unit of "Supervisory Professionals." There were approximately 100-200 employees in this bargaining unit with wages comparable to the plaintiffs'. The parties stipulated that the DWP had suspended three employees in the same bargaining unit for disciplinary violations. The DWP also employed management employees who were members of a different bargaining unit, and during the same time frame suspended four of these employees for various disciplinary violations.
 
 
 37
 The district court grouped both sets of employees, which resulted in a total of seven suspensions. The district court disregarded the suspension of one employee who had been subsequently reimbursed, leaving six suspensions that it held to be inconsistent with salaried status. Based on these six suspensions, the court found that the DWP was also engaging in the "actual practice" of making impermissible disciplinary deductions from the pay of purportedly salaried employees.
 
 B. Relevant Class of Employees
 
 38
 In reaching its determination that the DWP engaged in an "actual practice" of making improper disciplinary suspensions, the district court considered the suspensions of four DWP management employees, who were employees of a different rank and members of a different bargaining group than the plaintiffs. The DWP argues that it was error for the court to do so, as the managers were governed by a different collective bargaining agreement and because the "factors that govern the discipline of a manager are distinct from -- and often more severe than -- those that influence the discipline of a subordinate."
 
 
 39
 The DWP's argument, however, is also foreclosed by our decision in Klem. Klem involved two related groups of plaintiffs -- nurses and managers -- who were both purportedly salaried employees and both subject to the same disciplinary procedures pursuant to Santa Clara County Ordinance. 208 F.3d at 1088. Klem held that suspensions of all purportedly exempt employees were relevant to answering the question of the employer's intent. Id. at 1095. In this case, even though the managers were members of a different collective bargaining unit, there is no evidence suggesting the managers were not governed by the same disciplinary guide as the plaintiffs. It was therefore not error for the district court to consider these suspensions.
 
 C. Safety Rule
 
 40
 One of the DWP managers was suspended for "violating safety rules, procedures, or accepted practices, which results in injury, disability, or death, interruption or degradation of electric or water services, or damage to equipment or property." Although suspensions for violations of major safety rules are permissible under the salary basis test, 29 C.F.R. §§ 118(a)(5), the district court considered this suspension as improper because there was "no evidence the safety rule violated was one of major significance."
 
 
 41
 The DWP contends it was error for the district court to have considered this suspension as improper, and we agree. On a motion for summary judgment, all inferences should have been drawn in favor of the DWP, the nonmoving party. Bagdadi, 84 F.3d at 1197. The description of the violation supports an inference that the employee violated a major safety rule, and thus the suspension should not have been considered inconsistent with pay on a salary basis.
 
 D. Reimbursement
 
 42
 The employees contend that the district court improperly disregarded the suspension of one DWP employee because the employee was subsequently reimbursed. We agree.
 
 
 43
 The employee in question was suspended for three days for "requiring excessive supervision or instruction in performance of duties; failing to carry out assigned work adequately, directly or promptly; and unnecessarily disrupting the work of other employees." The employee's labor union then negotiated for a documented oral warning in lieu of an unpaid suspension. As the employees point out, the fact that the union was successful in reducing the penalty does not detract from the fact that the employee was apparently "subject to" reductions in pay for the quality of work, which is inconsistent with salaried status under the regulations. 29 C.F.R. §§ 541.118(a). Because there is no suggestion that the employee was reimbursed to correct an improper suspension of a salaried employee, the district court should have considered this suspension as evidence of an actual practice.
 
 E. Actual Practice
 
 44
 We are therefore left with seven total suspensions by the DWP, six of which violate the salary basis test. One of these six suspensions was for more than a week, which, as discussed in Section III.B. above, appears to have been the result of an erroneous legal interpretation. Three of the remaining five suspensions occurred prior to the mayor's directive which prohibited suspensions of salaried employees for less than a workweek. Construing all these circumstances in favor of the DWP as the non-moving party, we cannot say that the employees would be entitled to judgment as a matter of law. A reasonable factfinder could infer from the facts and circumstances surrounding the suspensions that the improper suspensions "do not amount to a pattern or practice of violations demonstrating an intention not to pay employees on a salaried basis." Klem, 208 F.3d at 1093-94. Summary judgment against the DWP is therefore reversed.
 
 V. CONCLUSION
 
 45
 The district court's grant of summary judgment against the City on the liability issue is properly supported in the record. The district court also correctly determined that the City could not use the "window of correction" to remedy the improper suspensions and that the employees were entitled to liquidated damages.
 
 
 46
 In light of the circumstances surrounding the relatively few improper disciplinary suspensions imposed by the DWP over the course of several years, however, it was inappropriate to grant summary judgment in favor of the DWP employees. A reasonable factfinder could find that the DWP did not objectively intend to treat the employees as hourly instead of salaried. Summary judgment against the DWP is reversed on all issues.
 
 
 47
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 48
 Each party to bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 We note that the mayor's directive in 1993, which was apparently an attempt to bring the City's actions into conformity with the salary basis regulations, also only prohibited suspending salaried employees for "less than a workweek."
 
 
 [2]
 We also note that not only was the affidavit improper under Rule 56(e), but it actually purported to contradict stipulated facts. Although the City had already stipulated that the nineteen disciplined employees were paid on a salary basis and did not receive overtime, Menkus asserted in the declaration that nine of these were actually paid on an hourly basis when suspended. A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts. Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975). A party is normally bound by its stipulation of facts. Holland Livestock Ranch v. U.S., 714 F.2d 90, 93 (9th Cir. 1983).
 
 
 [3]
 Although in section III.B. above we discuss four suspensions of more than a week, there were in fact six stipulated suspensions of more than a week. The two additional suspensions had been disregarded by the district court for other reasons based on the Menkus declaration, and thus must now be considered.
 
 
 [4]
 We consider the mayor's directive to be significant because if the City continued to suspend purportedly salaried employees in violation of the directive, it is more likely that the City did not truly consider these employees to be salaried.
 
 
 [5]
 This section provides:
 The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
 
 
 [6]
 The City contends that Klem conflicts with our earlier decision in Paresi, 182 F.3d at 668, on the "window of correction" issue. We, however, agree with Klem, which points out that Paresi's discussion of the "window of correction" was dicta. Klem , 208 F.3d at 1094.
 
 
 KLEINFELD, Circuit Judge, concurring:
 
 49
 I concur.
 
 
 50
 The reason that I write separately is that section III (B) is unnecessary to the opinion and should be deleted. In section III (C) and (D), we hold that the Menkus declaration is not competent evidence, and without it, the city failed to establish a genuine issue of fact.[1] As we say in section III (D), "Even if we ignore those six suspensions" of more than a week, the result is that we must affirm.[2]
 
 
 51
 The majority acknowledges that: (1) "we have never explicitly addressed" the issue of greater than a week suspensions;[3] (2) some FLSA cases "have suggested that only even-week suspensions comply with the salary basis test,"[4] but some FLSA cases "could create a negative implication that suspensions of a week or more are acceptable;"[5] (3) the City's understanding regarding the suspensions was not unreasonable;[6] and (4) many people may have relied on the Secretary's Auer Amicus Brief, which "constantly refers to suspensions of `less than a week' as problematic."[7] The question of whether suspensions of more than a week comply with the salary basis test is difficult, and we need not decide it in this case.
 
 
 52
 It is a bad idea to decide what we do not have to decide in this important and difficult area. A panel majority should not reach out to make law that need not be made. And because the rule stated in section III (B) is, as the majority must and does concede, unnecessary to resolution of the case, it is dictum anyway.
 
 
 
 Notes:
 
 
 [1]
 Maj. Op. at 148-19.
 
 
 [2]
 Id. at 419.
 
 
 [3]
 Id. at 417.
 
 
 [4]
 Id.
 
 
 [5]
 Id. at 417.
 
 
 [6]
 Id. at 418.
 
 
 [7]
 Id.