**THE GRAND CANYON TRUST, Plaintiff,**

v.

**TUCSON ELECTRIC POWER COMPANY, Defendant.**

**No. CIV 01–2189–PCT–EHC.**

United States District Court, D. Arizona.

March 4, 2003.

Jeffrey S Leonard, Leonard Collins & Gillespie PC, Phoenix, AZ, Reed Zars, Laramie, WY, for plaintiff.

Michael W Patten, John Matthew Derstine, Raymond S Heyman, Roshka Heyman & DeWulf PLC, Phoenix, AZ, Henry Vernon Nickel, Hunton & Williams, Washington, DC, for defendant.

## ORDER

CARROLL, District Judge.

Pending before the Court are Plaintiff's Motions for Partial Summary Judgment on (1) the Issue of Standing [Dkt. 55]; (2) its Second Cause of Action [Dkt. 56]; and (3) on its Third Cause of Action [Dkt. 58]. Also pending before the Court are Defendant's Motions for Summary Judgment on (1) the Basis of Laches [Dkt. 60]; (2) Plaintiff's Second Cause of Action [Dkt. 62]; (3) Plaintiff's Third Cause of Action; (4) Plaintiff's Second Cause and Third Cause of Action on Statute of Limitations and "Fair Notice" Grounds [Dkts. 67–1, 67–2]. All of these motions have been fully briefed and are therefore ready for the Court's review.

## I. Background and Procedural History

On December 21, 1977, the Environmental Protection Agency ("EPA") issued Defendant a permit to build two coal powered electricity generating facilities ("Springerville Plant") pursuant to the Clean Air Act of 1970 and the Prevention of Serious Deterioration Program of 1975 ("1975 Rules"). [Dkt. 11]. These Rules provided for revocation of the permit if construction was not commenced within eighteen months or was discontinued for at least eighteen months. 40 C.F.R. § 52.21(e)(3) (1975). In June of 1978, the EPA promulgated new deterioration standards ("1978 Rules") as a result of amendments to the Clean Air Act. [Dkt. 11]. The 1978 Rules allowed for projects with permits issued under the 1975 Rules to be exempt from increased standards of the 1978 Rules as long as they had "commenced construction" by March 19, 1979, did "not discontinue construction" for more than eighteen months, and "completed construction within a reasonable" amount of time. 40 C.F.R. § 52.21(i)(2)(ii)-(iii) (1978).

Incorporated in 1985, Plaintiff is a "regional conservation organization dedicated to conserving the natural resources of the Colorado Plateau." [Dkt. 28, p. 3, ¶ 7]. On November 9, 2001, Plaintiff filed a Complaint on behalf of its members, alleging

injury of the following interests: "(1) breathing air in the Little Colorado River airshed and surrounding areas free from [D]efendant's excessive pollutant discharges, (2) viewing natural scenery and wildlife unimpaired by an ugly haze caused, in whole or in part, by [D]efendant's discharges, and (3) protecting the natural ecology of the region from air pollution related impacts." [Dkt. 1, p. 3, ¶ 6; Dkt. 28, p. 3, ¶ 8].

Plaintiff asserts three causes of action in its First Amended Complaint: (1) Construction and Operation After Regulatory Deadline of March 19, 1979; (2) Construction and Operation After Expiration of Permit; and (3) Operation of Springerville [Plant] in Violation of NSPS Limits. [Dkt. 28]. In its Order granting Defendant's Motion for Summary Judgment, the Court found that Defendant had commenced construction pursuant to the 1978 Rules before March 19, 1979. [Dkt. 43].

## II.  Standard of Review

Summary judgment is proper "only if no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law." *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir.2001). The Court must view evidence in a light most favorable to the nonmoving party. *Id.*

## III.  Plaintiff's Motion for Partial Summary Judgment on Issue of Standing

■ In order to establish standing, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),*

*Inc.,* 528 U.S. 167, 180, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000).

### A.  Injury in Fact

The Ninth Circuit has held that "environmental and aesthetic injuries constitute injuries in fact for standing purposes." *Desert Citizens Against Pollution v. Bisson,* 231 F.3d 1172, 1176 (9th Cir.2000). The Supreme Court and the Ninth Circuit have found standing based on allegations that a party's activities have been restricted due to concerns about pollution. *See Laidlaw,* 528 U.S. at 181–83, 120 S.Ct. at 704–05; *Hall v. Norton,* 266 F.3d 969, 976 (9th Cir.2001); *NRDC v. S.W. Marine, Inc.,* 236 F.3d 985, 994 (9th Cir.2000), *cert. denied,* 533 U.S. 902, 121 S.Ct. 2242, 150 L.Ed.2d 230 (2001); *Ecological Rights Foundation v. Pacific Lumber Co.,* 230 F.3d 1141, 1149 (9th Cir.2000).

■ Because Plaintiff is comprised of members alleging their activities have been curtailed due to health concerns regarding pollution and the aesthetic impact visible in the environment surrounding the Springerville Plant [Dkt. 55, pp. 7–12], Plaintiff has satisfied the "injury in fact" requirement.

### B.  Fairly Traceable

■ In his declaration and report, Plaintiff's expert, Dr. Jefferson R. Snider, makes a direct link between the emissions from the Springerville Plant and the alleged injuries suffered by Plaintiff's members. [Dkt. 55, pp. 13–14]. Plaintiff has therefore satisfied the "fairly traceable" requirement.

### C.  Redressability

■ An injunction to discontinue excess pollution is sufficient to satisfy the redressability requirement, even if that injunction does not stop all pollution. *Texans United for a Safe Economy v. Crown*

*Central Petroleum Corp.,* 207 F.3d 789, 792–94 (5th Cir.2000); *Center for Biological Diversity v. Abraham,* 218 F.Supp.2d 1143, 1156 (N.D.Cal.2002). The Supreme Court has held "a sanction that effectively abates the conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description." *Laidlaw,* 528 U.S. at 185–86, 120 S.Ct. at 706.

■ Because Plaintiff seeks (1) declaratory and injunctive relief that would require Defendant to install technology to control its emissions, and (2) civil penalties, Plaintiff has satisfied the redressability requirement.

Plaintiff has satisfied all three requirements to establish standing, and the Court will therefore grant Plaintiff's Motion for Partial Summary Judgment on the Issue of Standing.

## IV. Defendant's Motion for Summary Judgment on the Basis of Laches

■ "To demonstrate laches, a party must establish (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Apache Survival Coalition v. U.S.,* 21 F.3d 895, 905 (9th Cir.1994) (citations and internal quotation marks omitted). Moreover, " '[l]aches must be invoked sparingly' in suits brought to vindicate the public interest." *Id.* (citations omitted).

### A. Lack of Diligence

The EPA issued the permit allowing Defendant to construct the Springerville Plant in 1977. [Dkt. 61, p. 1, ¶ 1]. Unit 1 of the Springerville Plant was completed in 1985, and Unit 2 of the Springerville Plant was completed in 1990. [*Id.,* p. 2, ¶ 4].

■ Plaintiff has existed since 1985. [Dkt. 76, p. 2, ¶ 6]. In addition to serving on Plaintiff's board of trustees since 1986 [Dkt. 61, p. 5, ¶ 25], John Schaefer ("Schaefer") served on Defendant's board of directors from May of 1983 until September of 1991. [*Id.,* p. 5, ¶ 26]. In 1989, Schaefer also served as Defendant's chairman of the board. [*Id.*]. During the period Schaefer served on Defendant's board, the construction of the Springerville Plant was often an agenda item and a regular topic of conversation. [Dkt. 61, Exh. B., pp. 12–13]. Plaintiff's members were aware of Schaefer's prior association with Defendant as early as 1990. [*Id.,* p. 25].

Plaintiff filed this action in 2001 [Dkt. 1], sixteen years after Unit 1 was completed and eleven years after Unit 2 was completed. The permitting, construction, and operation of the Springerville Plant was never a secret because the EPA and the Arizona Department of Environmental Quality ("ADEQ") have maintained files on these matters available for public review.[1] [Dkt. 61, pp. 1–2, ¶¶ 2–3; p. 5, ¶ 24].

Plaintiff has failed to provide an adequate explanation to preclude a finding of unreasonable delay. "This is not a case in which [Plaintiff] pursued an alternative avenue of relief, or one in which the legal basis for relief was not then recognized[.] Nor is this a situation in which diligence otherwise was demonstrated." *Apache,* 21 F.3d at 909 (citations omitted). Indeed, Plaintiff has acknowledged it had "no particular reason" for waiting more than a decade to pursue this matter. [Dkt. 76, p. 4, ¶ 20].

### B. Prejudice

■ To determine whether Defendant will suffer undue prejudice, the Court

---

1. Although Plaintiff disputes Defendant kept the EPA or the ADEQ informed of its progress [Dkt. 76, p. 2, ¶ 3], Plaintiff offers nothing more than this base assertion to refute Defendant's submitted declaration [Dkt. 61, Exh. A].

must consider whether the harm sought to be prevented is now irreversible or is reversible only at undue cost to the relevant project. *Apache,* 21 F.3d at 912. The project in question, two large coalfired power plants, has already been completed and operating for at least eleven years. If the relief Plaintiff seeks is granted, Defendant would have to replace the existing emission control equipment that Defendant has already purchased with different emission control equipment that may cost as much as $300,000,000. [Dkt. 61, Exh. A, p. 3, ¶ 7]. This figure excludes additional expenses that Defendant may incur if the Springerville Plant is forced to stop operating while the new emission control equipment is installed.

Furthermore, Plaintiff is seeking civil penalties amounting to $25,000 to $27,500 per day to accrue from the date Plaintiff alleges Defendant's permit was invalid. [Dkt. 28, p. 17]. Plaintiff's delay in bringing suit has only served to excessively increase those potential penalties.

The harms Plaintiff seeks to prevent are only reversible at undue cost to the Springerville Plant project, and Defendant has therefore established it will suffer prejudice as a result of Plaintiff's unreasonable delay.

### C. Vindicate the Public Interest

Although laches should be invoked sparingly in cases intended to vindicate the public interest, the Court finds the facts in this matter warrant the defense. The Court will therefore grant Defendant's Motion for Summary Judgment on the Basis of Laches.

Because the Court will dismiss this action, the Court need not consider the remaining pending motions.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment on the Issue of Standing [Dkt. 55] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on the Basis of Laches [Dkt. 60] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**, and the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.