**CANADIAN COALITION AGAINST THE DEATH PENALTY, et al., Plaintiffs,**

v.

**Charles L. RYAN, Defendant.**

**No. CIV 02–1344–PHX–EHC.**

United States District Court, D. Arizona.

May 19, 2003.

**1200**

David Cyrus Fathi, Nat. Prison Project of America, Civ. Liberties Union Foundation, Washington, DC, Ann Beeson, Amer. Civ. Liberties Union Technology & Liberty Program, New York City, Alice Loeb Bendheim, Alice L. Bendheim PC, Phoenix, AZ, Pamela Kirkpatrick Sutherland, Ariz. Civ. Liberties Union, Phoenix, AZ, for Canadian Coaltion Against Death Penalty, Stop Prisoner Rape, Citizens United for Alternatives to Death Penalty.

James Russel Morrow, Michael L. Brodsky, Daniel P. Schaack, Office of Atty. Gen., Liability Management Section, Phoenix, AZ, for Charles L. Ryan.

## ORDER

CARROLL, District Judge.

Pending before the Court are (1) Plaintiffs' Motion for Summary Judgment [Dkt. 38], and (2) Defendant's Motion for Summary Judgment. [Dkt. 37]. The parties have filed the appropriate Responses [Dkts. 40, 41] and Replies. [Dkts. 42, 43]. Plaintiffs seek (1) a declaration that the Arizona statutes codifying House Bill 2376[1] ("HB 2376") are unconstitutional, and (2) a permanent injunction to enjoin Defendant[2] from enforcing HB 2376. Defendant seeks dismissal of Plaintiff's Complaint.

### I. Factual Summary and Procedural History

Plaintiffs are prisoner and human rights advocacy groups that maintain Internet

---

1. A.R.S. §§ 31–235(C), (D); 31–242; and 41–1604(A)(9).

2. Terry Stewart's successor, Charles L. Ryan, has been substituted as Defendant in this action. Rule 25(d), Fed.R.Civ.P.

websites "as an integral part of their advocacy and public education work." [Dkt. 33, p. 2, ¶ 2]. Plaintiffs publish first-hand accounts from prisoners on their websites and often send information to prisoners in the mail.

In 2000, the Arizona Legislature passed HB 2376. Pursuant to Arizona statute, inmates housed by the Arizona Department of Corrections ("ADC") are prohibited from sending mail to or receiving mail from a communication service provider ("Provider"), or from having access to the Internet through a Provider. ADC is required to sanction inmates who (1) correspond or attempt to correspond with a Provider, or (2) request any person access a Provider's website.

Former Director Terry Stewart subsequently implemented Director's Instruction # 156 ("DI# 156") to set forth statutory prohibitions regarding inmate Internet access. Pursuant to DI # 156,[3] any inmate suspected of violating the Internet policy received a written notice from ADC alerting the inmate (1) unauthorized Internet use had been detected; (2) about the website(s) where information regarding the inmate had appeared; and (3) disciplinary sanctions would be administered and criminal sanctions might result if the inmate did not have all information regarding the inmate removed from the website(s) within three weeks.

ADC imposed disciplinary sanctions on at least five inmates because their names appeared on Internet websites. Each inmate stated either (1) he had requested his information be placed on the website be-

fore such requests constituted ADC policy violations; (2) he had no role in posting his information on the website; or (3) he had been unsuccessful in having his information removed from the website. Sanctions have included verbal counseling, reprimands, placement in Parole Class Three,[4] extra duty, disciplinary detention, and loss of privileges with respect to visits, phone calls, and commissary.

Plaintiffs filed this action on July 18, 2002. [Dkt. 1]. On December 16, 2002, the Court issued a Preliminary Injunction enjoining Defendant from enforcing the statutes codifying HB 2376 pending a final determination of the constitutionality of the statutes. [Dkt. 25].

## II. Standing

■ Although actual enforcement of HB 2376 is directed at prisoners, Plaintiffs have standing to challenge HB 2376's limiting effects on the circulation of their message. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 64, 83 S.Ct. 631, 636 n. 6, 9 L.Ed.2d 584 (1963); *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1153–54 (9th Cir.2000) (following *Sullivan* ).

## III. Motions for Summary Judgment

Summary judgment is proper "only if no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law." *Block v. City of Los Angeles,* 253 F.3d 410, 416 (9th Cir.2001). The Court must view evidence in a light most favorable to the nonmoving party. *Id.*

### A. Standard of Review

■ When constitutional rights of both inmates and outsiders are implicated,[5] the

---

3. HB 2376 and DI # 156 will be collectively referred to as HB 2376.

4. Inmates in this parole class are not eligible to earn release credits.

5. Although the parties have stipulated the Arizona Legislature "was motivated, *in part,* by the concern that crime victims and their relatives would be upset by viewing [I]nternet web sites [sic] featuring the prisoners who

standard of review becomes whether the regulation "is reasonably related to legitimate penological objectives, or whether it represents an exaggerated response to those concerns." *Turner v. Safley*, 482 U.S. 78, 87, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) (internal quotation marks and citation omitted); *see also Thornburgh v. Abbott*, 490 U.S. 401, 411, 109 S.Ct. 1874, 1880 n. 9, 104 L.Ed.2d 459 (1989). This test has four elements:

> "(1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally and (4) whether there exist ready alternatives ... that fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."

*Woodford*, 299 F.3d at 878 (citing *Turner*, 482 U.S. at 89–91, 107 S.Ct. at 2262–63) (internal quotation marks omitted).

#### 1. Rationally related to a legitimate penological objective

■ Defendant asserts the blanket restriction on communications between inmates and Providers is necessary to prevent attempts to defraud the public and to preclude inappropriate contact with minors, victims, or other inmates. [Dkt. 37, pp. 6–7]. However, existing regulations

and statutes already preclude such conduct. Arizona statutes criminalize fraud, and ADC regulations prohibit inmates from sending mail with the intent to defraud or otherwise illegally solicit assistance. A.R.S. Title 13, Chapter 23; ADC Department Order ("DO") 909.01, § 1.3.7. ADC policies also prohibit inmates from corresponding with (1) minors; (2) victims of their crimes; (3) other inmates; (4) any person who requests not to receive mail from the inmate; or (5) "anyone to whom lewd, threatening, or similar offensive material has been sent by the inmate[.]" DO 909.01, § 1.3.

Defendant also has methods in place to enforce these existing regulations. First, inmates have no direct Internet access. [Dkt. 33, p. 4, ¶ 7]. Second, prison staff members may open all incoming mail and inspect it for contraband. DO 909.02, § 1.1. Moreover, all incoming mail that is not privileged may be read to determine if the contents might facilitate criminal activity. *Id.* Third, outgoing mail may also be read and examined for contraband. DO 909.03, §§ 1.2, 1.6. If ADC finds extensive monitoring of inmate mail to be difficult or expensive, it is permitted to impose limits on the volume of mail inmates may receive.[6] *Crofton v. Roe*, 170 F.3d 957, 960 (9th Cir.1999). Finally, current prison regulations permit staff members to monitor and record inmates' telephone calls. DO 915.02, § 1.1; 915.05, § 1.1; [*see also* Dkt. 33, p. 7, ¶ 21].

Defendant's remaining arguments with respect to penological objectives also lack

---

had victimized them" [Dkt. 33, p. 4, ¶ 8] (emphasis added), the record does not reflect HB 2376 "is *centrally* concerned with restricting the rights of outsiders rather than prisoners." *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 878 (9th Cir.2002) (emphasis added).

**6.** Although Defendant asserts the 1973 consent decree in *Hook v. Arizona*, CIV 73–97–PHX–SMM, inhibits ADC's ability to limit the volume of mail inmates receive, Defendant failed to cite any language in the *Hook* decree to support this assertion. Moreover, the Court notes Defendant has a motion pending to vacate the *Hook* decree and dismiss that case. [*Hook*, Dkt. 747].

merit because "prison authorities cannot avoid court scrutiny under *Turner* by reflexive, rote assertions." *Armstrong v. Davis,* 275 F.3d 849, 874 (9th Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 72, 154 L.Ed.2d 14. For example, Stardust Johnson's testimony alone is insufficient to support Defendant's assertions that "[s]ociety as a whole may perceive confinement as less punitive, and victims of crime may perceive that the individuals who preyed upon them are not being adequately punished." [Dkt. 37, p. 9].

Likewise, Terry Stewart's affidavit [Dkt. 16, Exh. A] does little to support Defendant's assertion that "rehabilitative opportunities will be further limited." [Dkt. 37, p. 8]. Even when ADC was enforcing HB 2376, Stewart stated inmates were not permitted Internet access for rehabilitation purposes because ADC could not provide adequate supervision. [Dkt. 16, Exh. A, p. 2, ¶ 7]. Stewart did not state he anticipated greater resources in the future that would enable ADC to provide such supervision. Rather than demonstrating HB 2376 is rationally related to the proffered goal of rehabilitation, Stewart's affidavit indicates ADC is unlikely to provide inmates with Internet access for rehabilitation purposes regardless of the outcome of this action.

Finally, Defendant offers no evidence to support the similarly speculative outcome that the goal of deterrence will be impaired because "[b]oth the inmate and the general public may perceive incarceration as 'less arduous.'" [Dkt. 37, p. 8]. Although prison authorities are permitted to establish regulations in anticipation of potential problems, "they must at a minimum supply some evidence that such potential problems are real, not imagined." *Woodford,* 299 F.3d at 882 (citations omitted).

### 2. Remaining *Turner* factors

The Ninth Circuit has held the "rational relationship factor of the *Turner* standard is a sine qua non[,]" and failure to satisfy this prong requires a finding of unconstitutionality. *Prison Legal News v. Cook,* 238 F.3d 1145, 1151 (9th Cir.2001). Because the Court finds the statutes codifying HB 2376 are not rationally related to legitimate penological objectives and are therefore unconstitutional, it need not consider the remaining *Turner* factors.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment [Dkt. 38] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant, Defendant's employees, agents, servants, attorneys, and all other persons acting in concert or participation with Defendant are permanently enjoined from, directly or indirectly, enforcing Arizona House Bill 2376, codified at A.R.S. §§ 31–235(C), (D); 31 –242; and 41–1604(A)(9).

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Dkt. 37] is **DENIED**.