Arthur PIERRE, Petitioner-Appellant,

v.

**WASHINGTON STATE BOARD OF PRISON TERMS AND PAROLES, et al., Respondent-Appellee.**

No. 81–3618.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Decided Feb. 15, 1983.

Bruce D. MacLean, Seattle, Wash., for petitioner-appellant.

Michael P. Lynch, Asst. Atty. Gen., Olympia, Wash., for respondent-appellee.

Before KILKENNY, CHOY and FLETCHER, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant appeals from an order of the district court denying his petition for writ of habeas corpus. We affirm.

FACTS

Appellant was convicted on two counts of robbery in 1974, sentenced to twenty years imprisonment, and was paroled in February, 1979. On June 10, 1979, he allegedly participated in a robbery. His parole was suspended on July 23, 1979. On August 1, 1979, an informal administrative review was conducted in his absence by the Washington State Board of Prison Terms and Paroles (Parole Board) to determine whether probable cause existed to believe he had violated the terms of his parole. Upon finding probable cause, the Parole Board scheduled a formal on-site parole revocation hearing for August 13, 1979. At this hearing, appellant was represented by counsel, and was given an opportunity to present evidence, confront witnesses, and provide any mitigating factors favorable to his case. The Parole Board determined that appellant had violated his parole and revoked it. After returning to prison, he was given a new minimum term of 108 months.

## ISSUES

Appellant contends that his due process rights were violated in the determination of his minimum term. Additionally, while the appellant has abandoned all further contentions, we find it necessary to discuss the constitutional sufficiency of the revocation procedures employed by the Parole Board.

## DISCUSSION

### Minimum Term

Appellant claims that the Parole Board relied on erroneous information and failed to adhere to its own guidelines in setting his minimum term.

In *Matter of Sinka,* 92 Wash.2d 555, 599 P.2d 1275 (1979) (En Banc), the Washington Supreme Court ruled that prisoners are entitled to minimum due process in the determination of their minimum term. *Id.* 599 P.2d at 1279. This includes the prisoners' right to justifiably rely on the Parole Board's adhering to its guidelines. *Id.*

In Washington State, when a person is convicted of a felony, the trial court must sentence the person to the maximum statutory term. RCW 9.95.010. The Parole Board then evaluates the individual case and sets the minimum term. RCW 9.95.040. *See Sinka, supra,* 599 P.2d at 1277. The Parole Board has full discretion in setting the minimum term of confinement except in those cases where the minimum term is mandated by law. Board Rule 2.120. To aid in consistent decision making, the Parole Board devised a formula to implement its guidelines for setting minimum terms. The formula weighs various factors in the person's record including felony classes, aggravating circumstances and prior criminal record. Application of the formula yields a number of months referred to as the "guideline term." To allow flexibility in handling individual cases, the Parole Board is allowed a variation of approximately 12½ percent on each side of the guideline term. This is referred to as the "guideline range." The Parole Board may set the minimum term anywhere within the guideline range without explanation, but if it sets the minimum term outside the guideline range it must provide written reasons.

■ Appellant claims that 24 months were incorrectly added to his minimum term because the Parole Board relied on an FBI "rap sheet" that contained two convictions later reversed on appeal. He argues that the resulting minimum term exceeded the appropriate guideline range and no written reasons were provided. Initially, the Parole Board calculated the appellant's guideline term at 132 months, which included 24 months given for the two reversed convictions. However, the appellant informed the Parole Board of this discrepancy before the final parole revocation decision was made. We find that the Parole Board disregarded these prior convictions in making its final determination. The "rap sheet" has lines drawn through both convictions with the notations "not considered" written thereon. Moreover, disregarding the 24 months, the guideline term is 108 months. Thus, the guideline range is 93–123 months. The Parole Board was well within its discretion in setting the appellant's minimum term at 108 months without providing written reasons.

### Morrissey Problem

Although appellant abandoned his contention that failure to hold a preliminary hearing prior to the formal on-site revocation hearing violated his due process rights, we believe the issue is before us. However, we are convinced that under the factual circumstances of this case, Pierre was not denied his right to a prompt probable cause determination.

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that the possible deprivation of liberty inherent in parole revocation proceedings entitles a parolee to minimum due process protections. *Id.* at 482, 92 S.Ct. at 2600. The Court attempted to delineate precisely what process was due in these proceedings. On the *Morrissey* facts, the Court ruled that a parolee is entitled to two hearings, a preliminary hearing at the time of the arrest and detention to determine

whether probable cause exists to believe that he has committed a parole violation, and a somewhat more comprehensive hearing prior to making the final revocation decision. *Id.* at 485–489, 92 S.Ct. at 2602–2604. The Court reasoned that a preliminary determination of probable cause is necessary because (1) there is often a substantial time lag between the arrest and the eventual parole revocation determination; and (2) the parolee is often arrested at a place distant from the state institution. *Id.* at 485, 92 S.Ct. at 2602. "*Given these factors,* due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* [Emphasis supplied].

In *Morrissey,* the Supreme Court did not intend to lay down a rigid set of procedures to be followed ritualistically in every situation. Rather, it prescribed a general framework to guide future parole revocation proceedings in order to guarantee that parolees are not deprived of procedural due process. The themes of flexibility and informality run throughout *Morrissey:* "No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error." *Id.* at 487, 92 S.Ct. at 2603. "We have no thought to create an inflexible structure for parole revocation procedures." *Id.* at 490, 92 S.Ct. at 2604. "We cannot write a code of procedure .... Our task is limited to deciding the minimum requirements of due process." *Id.* at 488–489, 92 S.Ct. at 2603–2604. No formalistic set of procedures need be followed as long as the minimum due process requirements enunciated in *Morrissey* are met. Under the facts of *Morrissey,* the two-hearing requirement was just one way to satisfy minimum due process; it is not the only way in every case.

■ The factual circumstances in *Morrissey,* upon which the Supreme Court found a due process right to both a preliminary hearing and a final revocation hearing, are clearly distinguishable from the circumstances here. In this case, the appellant's parole was suspended on July 23, 1979. An informal administrative review was conducted shortly thereafter to determine whether there was probable cause to believe that appellant had violated the terms of his parole. While this administrative review did not rise to the level of a preliminary hearing, the formal on-site parole revocation hearing fully complied with the due process requirements of *Morrissey.* Since the on-site hearing was conducted only 21 days after appellant's parole was suspended, it was prompt enough to qualify as the preliminary probable cause determination required by *Morrissey.*

■ As long as the final parole revocation hearing is promptly held in this manner, there is no need for a separate preliminary hearing. *See State v. Myers,* 86 Wash.2d 419, 429, 545 P.2d 538, 544 (1976); *People v. Calais,* 37 Cal.App.3d 898, 902, 112 Cal.Rptr. 685, 688 (1974); *Moore v. Stamps,* 507 S.W.2d 939, 950 (Mo.App.1974). *Morrissey* does not contain an absolute requirement that there be two hearings, rather than one, when the formal on-site parole revocation hearing is promptly held and fully satisfies the due process requirements enunciated in that case. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands .... [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey* 408 U.S. at 481, 92 S.Ct. at 2600. In this case, the on-site hearing met the minimum due process standard of *Morrissey.*

### CONCLUSION

The order of the district court is AFFIRMED.