James H. WHITE, Petitioner–Appellant,

v.

O. Ivan WHITE, Warden, Federal Correctional Institution, Phoenix, Arizona, Respondent–Appellee.

No. 89–15376.

United States Court of Appeals, Ninth Circuit.

Submitted October 6, 1989.*

Unpublished Disposition Filed Nov. 15, 1989.

Memorandum Withdrawn Jan. 30, 1991.

Rehearing Granted May 4, 1990.

Resubmitted Sept. 24, 1990.

Decided Jan. 30, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Thomas M. Hoidal, Asst. Federal Public Defender, Phoenix, Ariz., for petitioner-appellant.

Janet L. Patterson, Asst. U.S. Atty., Phoenix, Ariz., for respondent-appellee.

Before NELSON, BOOCHEVER and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

James H. White, an inmate at the Federal Correctional Institution in Phoenix, Arizona, appeals the district court's denial of his habeas corpus petition. White challenges the decision of the United States Parole Commission (Commission) to revoke his parole. He contends that the denial of his request to confront adverse witnesses at his parole revocation hearing denied him due process in violation of the Fifth Amendment of the United States Constitution. We reverse.

## BACKGROUND

White was convicted of armed bank robbery in New Mexico in 1974, and was sentenced to twenty-five years imprisonment. He was released on parole in 1984. In 1985, the Albuquerque Police Department arrested White for the offense of criminal sexual contact with a minor. On the same day, federal agents searched his residence and found a .22 caliber revolver. After his release on bond, White left New Mexico.

White was arrested October 29, 1986 in Stockton, California, on a warrant issued by the Commission charging him with failure to submit monthly reports, failure to report a change in residence, criminal sexual contact with a minor, and unauthorized possession of a firearm. White underwent a preliminary parole revocation interview at the Sacramento County Jail. White admitted he failed to submit monthly reports and to report a change in residence, but on advice of counsel declined to answer the two criminal charges. The interviewing officer found probable cause for parole revocation on the counts of failure to submit monthly supervision reports and failure to report a change in residence.

During the interview, White was asked to sign Parole Form F–2 which allowed him to request a "local revocation hearing" at which adverse witnesses may be called if he could certify that he denied *all* charges against him; otherwise, he could request only an "institutional revocation hearing" at which no adverse witnesses may be called. As White admitted to technical parole violations, he was entitled only to an "institutional revocation hearing."

Soon thereafter, the Commission sent a letter to White indicating that it had found probable cause on all four charges and had therefore ordered a parole revocation hearing. White was assigned to the United States Penitentiary in Leavenworth, Kansas, where an institutional revocation hearing took place. At the hearing, White admitted the charges of failure to submit reports and failure to report a change in residence, but denied the sexual contact and firearms charges. With respect to the sexual contact charge, White wanted to confront two witnesses, the alleged victim and her mother. They had been staying with him at his apartment when the alleged incident occurred. He claimed the sexual contact charge was fabricated. He also wanted to confront them as to the illegal possession of a firearm charge as he claims the gun was planted in his apartment. White's request for adverse witnesses was denied, however, pursuant to his ineligibility for a "local revocation hearing."

The hearing panel concluded that White had violated parole by the two violations he admitted and the weapons charge, but added that there was insufficient evidence of sexual contact with a minor. The Regional Commissioner revoked White's parole on the three charges, set a presumptive reparole date after 32 months, and ordered a further hearing on the sexual contact charge.

At the supplemental hearing, White's renewed request for adverse witnesses was rejected. He denied the sexual contact charge, objected to the evidence presented, and claimed that the victim's statements, as outlined in police reports describing a videotaped interview, were lies. The panel found White guilty by a preponderance of the evidence. The Commissioner raised White's guideline range from 24–32 months to 34–44 months.

White filed an administrative appeal which was denied. He then filed a petition for writ of habeas corpus on January 21, 1988. The district court denied the petition. In an unpublished memorandum disposition, we affirmed. 889 F.2d 1097. White petitioned for rehearing, asserting that we mistakenly stated that he had not requested the presence of adverse witnesses at his revocation hearing. Upon reviewing the record, we found that White was correct and, after appointing counsel for White, we requested supplemental briefing. We now withdraw the unpublished disposition and file this opinion.

## STANDARD OF REVIEW

■ This court reviews de novo the district court's denial of White's habeas corpus petition. *See Bruni v. Lewis*, 847 F.2d 561, 563 (9th Cir.), *cert. denied*, 488 U.S. 960, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988), *cert. denied*, 489 U.S. 1055, 109 S.Ct. 1319, 103 L.Ed.2d 587 (1989). Review of parole revocation decisions is limited to determining "whether the Commission has acted outside its statutory authority or has committed a constitutional violation." *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 193 (9th Cir.1988) (quoting *Wallace v.*

*Christensen,* 802 F.2d 1539, 1552 (9th Cir. 1986) (en banc)).

## DISCUSSION

White mounts numerous challenges to the Commission's decision to revoke his parole. We find the only meritorious challenge arises from the Commission's refusal to allow White to confront adverse witnesses at his revocation hearings. We summarily reject the remaining challenges.

White argues that the Parole Commission's refusal to allow him to confront and cross-examine adverse witnesses violated his right to due process. Parole Form F–2 which White was requested to sign states in fine print that a parolee will not be entitled to the presence of adverse witnesses at an "institutional revocation hearing." But Form F–2 only allows the parolee to request a "local revocation hearing" at which adverse witnesses may be called if the parolee can certify that he or she has "not violated any of the conditions of [his or her] parole or mandatory release." Because White admittedly had violated two noncriminal parole conditions, Form F–2 barred him from requesting a local revocation hearing. At the institutional hearings, his request to confront adverse witnesses with respect to the much more serious parole violations attributable to the criminal charges was denied.

### A.

■ Before considering the merits of whether White was denied due process, we consider a jurisdictional issue raised by the government in its supplemental brief. The government claims that White's petition is nonjusticiable because he is not currently in custody for violating his parole in New Mexico but rather is confined due to subsequent prison misconduct and, therefore, his challenge of the revocation hearings that resulted from those alleged New Mexico violations is moot.[1] We reject the government's contention. Improper inclusion of the alleged parole violations in his record

creates substantial adverse consequences if his parole is found to have been wrongfully revoked. In *Robbins v. Christianson,* 904 F.2d 492 (9th Cir.1990), we rejected the government's similar contention that a revocation challenge was moot merely because the parolee was no longer in custody. There we found possible negative collateral consequences from the finding of drug use during parole both with regard to potential employment discrimination and use in a possible subsequent criminal action. Here, we find similarly that the stigma of a sexual contact with a minor charge, used as one of the bases for White's parole revocation, may lead to possible employment discrimination as well as use in a possible subsequent criminal action. These adverse consequences satisfy the collateral consequences exception to the mootness doctrine.

### B.

Turning to the merits of the petition, White argues he did not waive his right to have adverse witnesses present for cross-examination by failing to qualify for a "local revocation hearing." We agree.

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Court decided that parolees are entitled to due process before their parole is revoked. Based on the Court's finding that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others," the Court concluded that "[i]ts termination calls for some orderly process, however informal." *Id.* at 482, 92 S.Ct. at 2601. In determining what process is due, the Court considered the fact-intensive nature of the parole revocation decisionmaking process:

> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more

---

**1.** White's presumptive reparole date stemming from the New Mexico violations was June 30, 1990.

conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? *Id.* at 479–80, 92 S.Ct. at 2599. With reference to the second question, the Court stated, "This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were." *Id.* at 480, 92 S.Ct. at 2599. Thus, ascertaining whether White committed the more serious criminal offenses was of prime importance, particularly as "not every violation of parole conditions leads to revocation." *Id.* at 479, 92 S.Ct. at 2599.

To gather the facts necessary to make the two-part decision, the *Morrissey* Court contemplated two hearings. First, a "preliminary hearing" involving "some minimal inquiry ... at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest...." *Id.* at 485, 92 S.Ct. at 2602. The officer conducting the hearing determines "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." *Id.* at 487, 92 S.Ct. at 2603.[2] If the officer finds probable cause, due process requires another hearing. Labeled the "revocation hearing," the Court described it as

> an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.

*Id.* at 487–88, 92 S.Ct. at 2603.

■ The Court held that due process requires at a minimum that the revocation hearing include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)".[3] *Id.* at 489, 92 S.Ct. at 2604. Thus, at his revocation hearing, White had a right to confront and cross-examine adverse witnesses. The hearing officer did not find good cause for disallowing confrontation; instead, the hearing panel disallowed confrontation based on White's purported waiver of his *Morrissey* right when he signed Parole Form F-2.

■ The determinative issue then is whether White's admission of the two non-criminal parole violations, which consequently prevented him from qualifying for a local revocation hearing complete with adverse witnesses, constituted a waiver of his right to confront and cross-examine adverse witnesses. We find it did not. To uphold Parole Form F-2's bar on adverse witnesses when a parolee cannot certify that he or she has not violated any of conditions of parole would defeat the *Morrissey* right to confront adverse witnesses and the dual purposes of the revocation hearing, namely, to determine (1) whether conditions of parole were violated, and (2) whether the violations were of such a nature as to require recommission to prison. Where the facts are contested, the presence of adverse witnesses, absent good cause for their nonappearance, is necessary to enable the parole board to make accurate findings.

---

2. At this preliminary hearing "[o]n request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in [the parolee's] presence." *Id.* at 487, 92 S.Ct. at 2603. White argues that he should have been allowed to confront and cross-examine adverse witnesses at his preliminary hearing, regardless of whether he requested them. *Morrissey* clearly precludes such a challenge.

3. Other minimal requirements enumerated in *Morrissey* are: "(a) written notice of the claimed violations of parole; (b) disclosure of the parole evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; ... (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to evidence relied on and reasons for revoking parole." *Id.* at 489, 92 S.Ct. at 2604.

The government's only response to *Morrissey* is to point out that in the next to final paragraph of its opinion, the Court stated "[i]f it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." *Id.* at 490, 92 S.Ct. at 2605. The government takes this statement out of context. The statement refers to an earlier comment by the Court that the respondents for the first time asserted in their brief to the Supreme Court that the petitioners were in fact granted hearings after they were returned to the penitentiary and that at those hearings they "admitted the violations alleged in the parole reports." *Id.* at 476, 92 S.Ct. at 2598. The Court disregarded this statement in its opinion because it was not supported in the record. In its remand, however, the Court left it to the district court to determine whether the petitioners actually admitted the parole violations to the Parole Board, and further instructed the district court to ascertain whether the violations were reasonable grounds for revoking parole under state standards. Here, by contrast, White did not admit two of the alleged parole violations.

■ We do not hold that parolees can never waive their *Morrissey* rights. Instead, we find that White's signing of Parole Form F–2 did not constitute a waiver. A waiver of a constitutional right must be knowing and voluntary. *Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Admitting some, but not all, parole violations is hardly a volitional waiver of the right to confront.

■ Nor do we conclude that adverse witnesses must be made available at institutional revocation hearings. But the government cannot circumvent the *Morrissey* right to confront adverse witnesses by limiting the type of revocation hearing available to a parolee who admits some, but not all, parole violations.

In sum, it is clear from a full reading of *Morrissey* that the admission of the noncriminal violations did not deprive White of his right to confront and cross-examine adverse witnesses concerning the two serious criminal charges. We conclude that Parole Form F–2's bar to the presence of adverse witnesses at institutional revocation hearings violates due process.

CONCLUSION

The revocation process was flawed by the Commission's refusal to allow White to confront adverse witnesses. Although White did not request the presence of adverse witnesses at his preliminary hearing, he did request them at both the institutional and the supplemental hearings. Based on our holding that Parole Form F–2's ban on adverse witnesses at institutional hearings denied White due process, we remand to the district court, instructing that the writ be granted and that both the sexual contact with a minor and firearm possession charges be ordered expunged from White's parole violation record.[4]

REVERSED and REMANDED.

---

**4.** We express no opinion whether White may continue to be confined for reasons other than those which were the subject of the revocation proceedings at issue here.