**L.H., A.Z., D.K., and D.R., on behalf of themselves and all other similarly situated juvenile parolees in California, Plaintiffs,**

v.

**Arnold SCHWARZENEGGER, Governor, State of California, et al, Defendants.**

**No. CIV. S–06–2042 LKK/GGH.**

United States District Court, E.D. California.

Sept. 19, 2007.

See, also, 2007 WL 2009807.

Carole Shauffer, Corene Thaedra Kendrick, Geoffrey Thomas Holtz, Kristen A. Palumbo, Briana Lynn Morgan, Bingham McCutchen LLP, Susan Lynn Burrell, Maria V. Morris, Meghan Regina Lang, Michael Bien, Sarah Laubach, Gay Crosthwait Grunfeld, Rosen, Bien & Galvan, LLP, San Francisco, CA, Donald Specter, San Quentin, CA, for Plaintiffs.

Michelle Leigh Angus, Attorney General's Office of the State of California, Sacramento, CA, William C. Kwong, Minami Tamaki LLP, San Francisco, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This is a class action brought by a class of juvenile parolees in California who claim that defendants' policies and practice deny them their constitutional rights to due process, equal protection, and assistance of counsel. They also allege violation of their statutory rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendants include the Governor of the State of California and various persons and entities administering California's juvenile parole system.

Plaintiffs move for partial summary judgment on two alternative grounds. First, plaintiffs seek that the Court find, as a matter of law, that defendants violate plaintiffs' due process rights by failing to conduct two hearings prior to revocation of parole. Alternatively, plaintiffs move for partial summary judgment on the grounds that, if a single hearing is sufficient to revoke plaintiffs' parole, defendants violate plaintiffs' due process rights by failing to hold such a hearing promptly. Plaintiffs seek an injunction requiring that defendants hold probable cause hearings for all juvenile parolees within ten calendar days of the parolee being taken into custody for revocation proceedings. The court grants the plaintiffs' motion on the issue of whether the defendants violate the plaintiffs' due process rights, but the court denies the motion as to injunctive relief.

## I. BACKGROUND AND FACTS[1]

Currently, there are approximately 2,775 juveniles on parole in California. Decl. of Maria Morris ("Morris Decl.") Ex. L, ¶ 4. The certified plaintiff class consists of juvenile parolees in or under the juris-diction of California, including all juvenile parolees with disabilities as defined in section 504 of the Rehabilitation Act and the Americans with Disabilities Act, who are (1) in the community under parole supervision or are at large, or (2) in custody in California as alleged parole violators and who are awaiting revocation of their parole, or (3) in custody after having been found in violation of their parole and returned to custody. Order Granting Class Certification, Feb. 28, 2007.

A juvenile parolee may have his parole revoked based on the determination that he has committed a new crime or that he has failed to abide by the other terms and conditions of parole. Cal.Code Regs. tit. 15, § 4982. Prior to revocation, the parolee can be arrested and detained pending the Juvenile Parole Board's determination that there is probable cause to believe that the parolee has violated the conditions of parole, or "when a violation of parole has been established." Cal.Code Regs. tit. 15, § 4978(b)(1).

### A. Current Process for Parole Revocation When the Parolee Is Not Accused of a New Crime

A parolee may have his parole revoked based upon his having violated the terms of his parole, even when the parolee has not been accused of a new crime. California regulations refer to this as a "technical violation" of parole. Cal.Code Regs. tit. 15, § 4982(a)(2). The defendants' regulations do not provide for a hearing to determine whether there is probable cause to believe that the conduct comprising the technical violation did in fact occur. SUF ¶ 10; Defendants' Response to Plaintiff's Request for Admissions 14:16–15:16, Exh. C, Decl. of Sarah Laubach ("Laubach

---

1. All facts are undisputed unless otherwise noted.

Decl.") (admission of defendant Division of Juvenile Justice).

Once a parolee has been taken into custody for a technical violation, California regulations require that a hearing occur within sixty days to determine whether the parolee has violated a condition of his or her parole. Cal.Code Regs. tit. 15, § 4978(c) (1); SUF ¶ 13. This 60–day period can be extended upon written justification. Cal.Code Regs. tit. 15, § 4978(c)(2); SUF ¶ 15; *cf.* Decl. of Gay Grunfeld ("Grunfeld Decl.") Exh. A, B, F, G, L.

More than half of all juvenile parole revocation proceedings in recent years have been for technical violations. SUF ¶ 6. From 2004–2006, approximately 75 percent of parole revocation proceeding for technical violations resulted in the parolee being continued on parole or discharged from parole; in other words, technical violations led to a parolee's parole being revoked in only one-fourth of the cases. SUF ¶ 9.

**B.  Current Process for Parole Revocation When the Basis of the Revocation is the Parolee's Having Been Charged With a New Crime**

When the parolee faces revocation based on new criminal charges, defendants' regulations provide for a preliminary hearing to determine that there is probable cause to believe that the parolee committed the crime. Cal.Code Regs. tit. 15, § 4981. The juvenile parolee may be detained while this determination is made. SUF ¶ 1. After the parolee is detained, the parolee's parole agent prepares a detention report, which identifies the reasons for the detention. Depo. of Marco Reyna[2] ("Reyna Depo.") 31:1–31:5, Exh. E, Laubach

Decl. This report is then reviewed by a Supervising Parole Agent. Reyna Depo. 31:8–31:12, Exh. E, Laubach Decl. If the Supervising Parole Agent decides to place a parole-hold on the parolee, within forty-eight hours the parolee is given notice of the allegation against him. Defendant's Response to Plaintiff's Request for Admissions 4:19–4:20, Exh. C, Laubach Decl. (admissions of defendant Division of Juvenile Justice). The parolee is able to waive his appearance at the probable cause hearing. Reyna Depo. 25:2–25:17, Exh. E, Laubach Decl.

When the parolee is given notice of the allegation of the law violation, the parolee is also given a "Parolee Probable Cause/ Violation Detention Hearing Waiver Feedback" form. Defendant's Response to Plaintiff's Request for Admissions 16:9– 16:11, Exh. C, Laubach Decl. (admissions of defendant Division of Juvenile Justice). This form presents the parolee with two options: that the parolee waives "a probable cause/detention hearing and a timely violation hearing for any law violations," stating that the parolee understands the waiver is not an admission of guilt. Alternatively, the parolee can request a detention hearing before the Youth Authority Board. Decl. of Maria Morris ("Morris Decl.") Exh. D. Parolees are not represented by counsel when given this form. Reyna Depo. 70:10–70:12, Exh. E, Laubach Decl. If the waiver form is not returned postmarked within five calendar days, the parolee is deemed to have automatically waived his right to appear at the probable cause hearing. Morris Decl. Exh. D.

If the parolee waives his appearance at the probable cause hearing, a hearing officer from the Juvenile Parole Board determines whether the parolee should be detained pending adjudication of the new

---

**2.**  Marco Reyna is one of the persons designated by the defendants as most knowledgeable  of juvenile parole hearings.

crime with which the parolee has been charged. Reyna Depo. 31:16–31:24, Exh. E, Laubach Decl. The hearing officer bases his determination on the report offered in support of the parole-hold. *Id.* Defendant concedes that in these situations, where the parolee has waived his appearance at the probable cause hearing, "California ... does not conduct an actual hearing." Defs.' Opposition at 10; *cf.* Reyna Depo. 25:2–25:6, Exh. E, Laubach Decl. (stating that if the parolee signs the waiver, he is "waiving [his] rights to a ... probable cause detention hearing").

Very rarely does a juvenile parolee invoke his right to appear at the probable cause hearing; as defendants concede, only when the parolee invokes this right does the hearing actually occur. SUF ¶ 18; Defs.' Opposition at 10. Neither party has described for the court in detail the process and procedures that exist at these probable cause hearings.

After the parolee has been detained for a law violation, California regulations allow sixty days for a probable cause hearing. SUF ¶ 12; Cal.Code Regs. tit. 15, § 4978(c)(1)(B). This period may be extended upon written justification being presented to the hearing officer. SUF ¶ 14; Cal.Code Regs. tit. 15, 4978(c) (2); *cf.* Decl. of Gay Grunfeld Exh. H, I.

## III.

### STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995).

Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.,* 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland*, 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1228 (9th Cir.2000).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 290, 88 S.Ct. 1575; *see also T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also Int'l Union of Bricklay-*

*ers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *see also In re Citric Acid Litigation*, 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *See also Headwaters Forest Def. v. County of Humboldt*, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## IV. ANALYSIS

### A. Evidentiary Issues

#### 1. Plaintiffs' Objections to Defendants' Declarations in Opposition to Plaintiffs' Motion for Summary Judgment

Federal Rule of Civil Procedure 56(e) mandates that affidavits supporting or op-

1078

posing a motion for summary judgment "set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Competence to testify requires that the witness have personal knowledge of the facts comprising his testimony. Fed.R.Evid. 602. An affiant whose statements rely on hearsay clearly does not meet this standard. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir.2001).

An affiant who has not established the basis of his or her knowledge has also failed to meet the requirements of Federal Rule of Civil Procedure 56(e). In such a situation, as the Ninth Circuit explained, "it is impossible to evaluate potential hearsay implications of [the] statements [in the affidavit] without the required personal knowledge foundation." *Norita v. N. Mariana Islands*, 331 F.3d 690, 697 (9th Cir.2003). Although the affiant may have based his or her statements on personal knowledge, the affiant also could have based the statements on business records he or she read, conversations with others who did have personal knowledge, or even double hearsay. *Id.* at 697–98. These possibilities justify strict adherence to the directives of Rule 56(e).

■ Here, portions of the declaration by Shelley Jones that defendants offer in support of their opposition to summary judgment purport to explain how the regulations for revoking the parole of a juvenile are in fact carried out. *See* Decl. of Shelly Jones ("Jones Decl.") ¶ 3 (describing how parole agents "often" investigate the circumstances of a law violation and when the Juvenile Parole Board "usually" holds probable cause hearings), ¶ 4 (describing how the Supervising Parole Agent decides

whether to issue a parole-hold), ¶ 5 (stating that "occasionally" the revocation hearings do not occur within the typical timeline), ¶ 6 (averring "upon information and belief" that there are educational and work opportunities for juvenile parolees in DJJ facilities). In her April 11, 2007 deposition, Ms. Jones identified her job duties, which include scheduling hearings; drafting changes to regulations, policies, and procedures; training hearing officers and parole agents; analyzing appeals from wards; and analyzing legislation. Depo. of Shelly Jones, Exh. F, Laubach Decl. This being the case, the court concludes that the above-referenced portions of the Jones declaration fail to comply with Rule 56(e), because the basis of Ms. Jones' knowledge is neither stated nor apparent to the court. Therefore, the court sustains the plaintiffs' objection with regards to the factual averments contained in these portions of her declaration.[3]

■ The declaration from Allen Wilcher that defendants offer in support of their opposition to summary judgment is similarly flawed. In his declaration, Mr. Wilcher described what occurs after a juvenile parolee has been arrested on a new charge or when he is believed to have committed a technical violation of the terms of his parole. Decl. of Allen Wilcher ("Wilcher Decl.") ¶¶ 2–3. Although Mr. Wilcher identified himself as a Parole Agent III at California Department of Corrections and Rehabilitation, a position he has held since 1997, he has not explained how he is aware of the steps that actually occur when a parolee is suspected to have violated the terms of his parole. *See* Wilcher Decl. ¶ 1. Mr. Wilcher has not declared that his statements are based on his personal

3. It may be that the defendants sought to tender Jones as an expert, which might justify reliance on otherwise impermissible matters.

The defendants, however, failed to seek a determination of that status or actually even notice such a status.

knowledge and observations. Because the statements in Mr. Wilcher's declaration may very well be based on business records Mr. Wilcher read, conversations with others who did have personal knowledge, or even double hearsay, the declaration does not satisfy Rule 56(e).[4]

Accordingly, the court sustains plaintiffs' objections to defendants' declarations in opposition to plaintiffs' motion for summary judgment.

### 2. Plaintiffs' Request for Judicial Notice

Plaintiffs request the court take judicial notice of Senate Report number 94–369, 1976 U.S.C.C.A.N. 335. This report describes the Parole Commission and Reorganization Act. Plaintiffs have provided a copy of this report to the Court as Exhibit K to the Declaration of Maria Morris in Support of Plaintiff's Motions for Partial Summary Judgment.

A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b). A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d).

Here, the Senate Report is a public record, and therefore the court is able to accurately and readily determine its contents. Furthermore, the contents of the Report derive from a source whose accuracy cannot reasonably be questioned. Finally, plaintiffs have complied with Federal Rule of Evidence 201(d) by requesting ju-

dicial notice and supplying the court with a copy of the Report.

Therefore number 94–369, the court takes judicial notice of Senate Report 1976 U.S.C.C.A.N. 335.

### B. Framework for Analysis of Plaintiffs' Motion for Summary Judgment

Plaintiffs move for partial summary judgment on two alternative grounds. First, plaintiffs argue that, as a matter of law, defendants violate plaintiffs' due process rights by failing to conduct two hearings prior to revocation of parole, one of which being a preliminary hearing. Second and alternatively, plaintiffs move for partial summary judgment on the grounds that, if a single hearing is sufficient to revoke plaintiffs' parole, defendants violate plaintiffs' due process rights by failing to hold such a hearing promptly. Plaintiffs seek an injunction requiring that defendants hold probable cause hearings for all juvenile parolees within ten calendar days of the parolee being taken into custody for revocation proceedings.

Because the issues presented in the present case present a legal analysis similar to that which the court undertook in *Valdivia v. Davis,* 206 F.Supp.2d 1068 (E.D.Cal.2002), the court recreates the relevant portions of that opinion here.

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court established a three step balancing test to resolve procedural due process claims. While *Mathews* did not involve claims arising in a parole context, that fact does not appear significant. Indeed, procedural due process jurisprudence appears to employ the same three part test irrespective of the context in which the claim arises. *See Greenholtz v.*

---

**4.** Again, the defendants have failed to even seek to have Wilcher declared an expert.

*Inmates, Nebraska Penal & Correctional Complex,* 442 U.S. 1, 18, 99 S.Ct. 2100, 60 L.Ed.2d 668,(1979).[5]  Of course to recognize that the same standard applies, is not to say that context is irrelevant.  On the contrary, as explained below, context is one of the elements to be considered in arriving at a conclusion as to what process is due.  I turn to the three part test.

The first criteria in assessing the process due is the value of the liberty interest and the degree of potential deprivation. *See Mathews,* 424 U.S. at 341, 96 S.Ct. 893. (citing *Morrissey,* 408 U.S. 471, 92 S.Ct. 2593).  As the Court in *Morrissey* noted, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by the governmental action." *Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593 (quoting *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)).  After identifying the nature of the right at issue, the court must consider "the fairness and reliability

of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards." *Mathews,* 424 U.S. at 343, 96 S.Ct. 893.  Finally, the court must consider the administrative burden and other societal costs, or benefits, which might be associated with requiring more process as a matter of constitutional law. *Id.* at 347, 96 S.Ct. 893.

As *Morrissey* noted, the liberty interest at stake in cases such as the one at bar, is a parolee's interest in retaining the "enduring attachments of normal life" so long as he or she does not violate the conditions of parole.  408 U.S. at 482, 92 S.Ct. 2593.[6]  While there may be no constitutional right to parole and while the conditions of parole may significantly restrict a parolee's freedom, it is self-evident that the liberty interest of a parolee is quite significant, and much greater than the liberty interest of a prisoner still confined within the prison system.  *See id.*[7]  ("Though the State properly subjects [a parolee] to many restrictions not applicable to other citizens, his condition is very different from that of confinement in prison.").[8]

5. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the seminal parole violation case preceded *Mathews.*  It cited to *Mathews'* "direct ancestors in reaching its conclusions".  *See Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593(citing *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287(1970); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556(1972)).  Moreover, *Mathews,* while involving a property interest in Social Security disability benefits, cited to cases in the prison context, as well as *Morrissey,* to develop its test for determining the process due before deprivation of a constitutionally protected interest.  *See Mathews,* 424 U.S. at 333–34, 96 S.Ct. 893 (citing *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935(1974); *Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593)

6.  The Court explained that:
"Subject to the conditions of his parole, he [the parolee] can be gainfully employed and is

free to be with family and friends and to form the other enduring attachments of normal life ...."  *Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593.  While juveniles may not all be seeking gainful employment, they may be enrolled in school, an equally important opportunity.

7.  Just ask any defendant in a criminal trial whether he wants probation or imprisonment.

8.  Since the liberty interest of those persons outside the prison is far greater then those who are imprisoned, cases such as *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), which involve asserted rights within prison, do not inform what weight is to be accorded the liberty interest at stake in the parole context.  *See also Young v. Harper,* 520 U.S. 143, 147–48, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997).

Under the rationale of *Morrissey*, the "fairness and reliability" of the existing procedures should then be measured by determining how effective the procedures are in assuring a factually accurate statement of (1) whether there is probable cause to believe that the parolee violated parole (procedures during preliminary stage), and (2) whether the parolee did in fact violate parole (procedures during revocation hearing). As the High Court explained, "[i]n analyzing what [process] is due, we see two important stages in the typical process of parole revocation ... The first stage occurs when the parolee is arrested and detained, usually at the direction of the parole officer. The second occurs when parole is formally revoked." 408 U.S. at 485, 92 S.Ct. 2593. The first stage is to insure that the parolee's life is not disrupted by an unjustified parol hold, while the second stage requires reliable information justifying the parolee's long term reincarceration. *Id.* Fundamentally, the process due must include procedures which will prevent parole from being revoked because of "erroneous information or because of an erroneous evaluation." *Id.* at 484, 92 S.Ct. 2593.

Of course, as with all due process considerations, the balance which the court strikes in the parole revocation context is informed by an understanding that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 481, 92 S.Ct. 2593. Put bluntly, however, flexibility is not a shibboleth permitting something less than what the particular situation does demand.

■ Given all the above, I now consider the process that is due specifically when a parolee's liberty interest is endangered by a claimed violation of the terms of parole.[9]

To assess the validity of plaintiffs' claim, the court must first determine whether there is controlling precedent speaking to the particular procedures due at the initial stage of the parole revocation process. Obviously where binding precedent requires particular procedures, the pertinent question is whether defendants are providing those required procedures. In the absence of such controlling precedent, the task is to apply the *Mathews* process to the procedures at issue. As I now observe, the courts by which I am bound have spoken with less than perfect clarity on the issues before me.

## C. Due Process Requirements for Pre–Revocation Hearings

Plaintiffs argue that due process requires, alternatively, a bifurcated process that includes a preliminary hearing before the revocation hearing, or a single revocation hearing held promptly. This court concludes that because neither a preliminary hearing is held promptly nor a single revocation hearing held promptly, the defendants' policies and practices violate the plaintiffs' due process rights.

---

9. Defendants appear to suggest that the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A), has altered the values to be balanced requiring the court to afford "substantial weight" to any adverse impact upon public safety or the operation of the criminal justice system. I cannot agree. By its terms, Section 3626(a)(1)(A) applies to any "civil action with respect to prison conditions." Here, plaintiffs do not challenge prison conditions. Rather, plaintiffs challenge quite a different subject, parole violation procedures. As noted *supra*, the Supreme Court has long recognized different issues are at stake when addressing parolees as contrasted with those who are imprisoned. *Young v. Harper*, 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d 270(1997). While considerations of public safety and the impact on the criminal justice system are proper factors to weigh in determining the process due, the weight to be accorded those factors is unaffected by PLRA.

Plaintiffs' first alternative claim is that they are being denied due process because defendants do not afford juvenile parolees preliminary hearings to verify the existence of probable cause prior to the revocation hearing. Defendants acknowledge that juvenile parolees accused of technical violations do not receive preliminary probable cause hearings. SUF ¶ 10. Defendants contend, however, that all juvenile parolees accused of law violations are entitled to preliminary hearings, although many choose to waive their appearance at them. Defendants argue that the resulting "hearing" [10] that occurs in the parolee's absence satisfies the demands of due process.

Plaintiffs' second alternative claim is that if a distinct probable cause hearing is not required, defendants nevertheless violate plaintiffs' due process rights by failing to hold a hearing in a sufficiently timely manner. Whether a juvenile parolee is taken into custody for an alleged technical violation or a law violation, the State has sixty days (or more, upon written explanation) to hold any hearing. SUF ¶¶ 12–15. This includes the single revocation hearing for alleged technical violators and the probable cause determination for law violators. SUF ¶¶ 12–13.

As the court explains below, because for neither technical nor law violators does the State make a prompt probable cause determination, the defendants' parole revocation process for juvenile offenders violates the latter's due process rights. Even if there is some question as to whether a separate preliminary hearing must be held in order to satisfy the demands of due process, it is clear that the law requires that a probable cause determination be made promptly.

## 1. Defendants Are Required to Provide Plaintiffs With a Prompt Probable Cause Determination

■ In *Morrissey*, the Supreme Court appeared to determine that the Constitution requires a two stage process. 408 U.S. at 485, 92 S.Ct. 2593, ("[W]e see two important stages in the typical process of parole revocation," the first being the "arrest and preliminary hearing" stage, and the second, "when parole is formally revoked."). The Court explained that the initial "inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.*

The *Morrissey* Court's explanation of the requirements for a preliminary procedure plainly suggests that it contemplated a "hearing" rather than some ex-parte process, for confirming probable cause. For instance, in describing the "preliminary hearing," the Court stated that "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." *Id.* at 486–87, 92 S.Ct. 2593. The Court added that "[a]t the hearing, the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer." *Id.* at 487, 92 S.Ct. 2593. Moreover, on request of the parolee, the "person who has given

---

10. Defendants concede that, when a juvenile parolee waives his appearance at the preliminary hearing, the State then does not hold "an actual hearing." Defs.' Opposition at 10. Instead, a hearing officer makes a probable cause determination based on the information provided by the Supervising Parole Agent. Reyna Depo. 31:16–31:24, Exh. E, Laubach Decl.

adverse information on which parole revocation is to be based is to be made available for questioning in his presence." *Id.* Finally, the Court required that the determination of reasonable grounds "should be made by someone not directly involved in the case." *Id.* at 485, 92 S.Ct. 2593.

Despite the fairly detailed description of a constitutionally sufficient preliminary determination, it remains true that the Court has repeatedly taught, and not just in *Morrissey,* that the requisites of due process are flexible. As will be seen, this teaching has suggested to some that *Morrissey* did not command two hearings under all circumstances. As I now explain, that conclusion, while plausible, is difficult to maintain in light of the Supreme Court's next discussion of the issue.

A year after *Morrissey,* the Court explained that in that case "we held that a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656, (1973); *see also id.* at 786, 93 S.Ct. 1756(*"Morrissey* mandated preliminary and final revocation hearings."). The *Gagnon* Court again emphasized that "[a]t the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations . . . an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the

hearing." 411 U.S. at 786, 93 S.Ct. 1756. Observing no difference between parole revocation and probation revocation, the Court stated that "we hold that a probationer, like a parolee, is entitled to a preliminary and final revocation hearing." *Id.* at 782, 93 S.Ct. 1756.

While it would appear that, without more, *Morrissey* and *Gagnon* are dispositive, this court is also bound by the Ninth Circuit's interpretation of the teachings of the High Court. I thus turn to the Circuit's cases.

Nine years after *Gagnon,* the question of hearings under *Morrissey* was discussed in *Pierre v. Washington State Board of Prison Terms and Paroles,* 699 F.2d 471 (9th Cir.1983). There, a habeas petitioner, after having his parole revoked, claimed that the State did not adhere to its own guidelines for determining his minimum prison term. The petitioner also claimed that he was denied due process because the State did not provide him with a preliminary hearing prior to his revocation hearing. On appeal, the petitioner abandoned his claim regarding the preliminary hearing. Nonetheless, after rejecting his claim concerning State guidelines, the Circuit panel stated that "[a]lthough appellant abandoned his contention that failure to hold a preliminary hearing prior to the formal on-site revocation hearing violated his due process right, we believe the issue is before us." *Pierre,* 699 F.2d at 472.[11] The *Pierre* court then opined that the Supreme Court did not intend to require two hearings in every case, but only in cases with a fact pattern similar to the one before it in *Morrissey. See Pierre,* 699 F.2d at 472–73.[12] Emphasizing the lan-

---

11. Given that anyone may waive a constitutional claim, the *Pierre* court's assertion is indeed puzzling

12. In *Morrissey,* the Court explained the importance of a prompt preliminary hearing noting that because "there is typically a substantial time lag" between arrest and the final revocation determination, and since "it may

guage in *Morrissey* abjuring formalism in the revocation process, *Pierre* then declared that "[u]nder the facts of *Morrissey*, the two-hearing system requirement was just one way to satisfy minimum due process; it is not the only way in every case." *Id.* The Circuit panel failed to discuss *Gagnon's* explanation that in *Morrissey* the Court had held that, indeed, two hearings were required.

At least one way of reading *Pierre* so as to be consistent with *Morrissey*, is to read it as not departing from an obligation to provide a preliminary probable cause hearing, but rather, as concluding no more than that a final revocation hearing occurring within twenty-one days of the arrest of a parolee was "prompt enough to *qualify as* the preliminary probable cause determination required by *Morrissey.*" *Pierre*, 699 F.2d at 473 (italics added). This reading of *Pierre* is supported by subsequent Ninth Circuit cases. In *United States v. Stocks*, 104 F.3d 308 (9th Cir.1997), a panel stated that "[a]fter *Morrissey*, parole may not be revoked unless the parolee is afforded a hearing as to probable cause and a final revocation hearing. At the preliminary parole revocation hearing, a parolee is entitled to notice of the alleged parole violations, an opportunity to appear and to present evidence, a

conditional right to confront the government's witnesses, an independent decisionmaker, and a written report of the hearing." *Id.* at 311; *see also White v. White*, 925 F.2d 287 (9th Cir.1991) (finding that *Morrissey* contemplated both a preliminary and a final revocation hearing).[13]

Whatever else may be said for *Pierre*, it seems apparent it is dicta. Moreover, although this court should pay respectful attention to Circuit dicta, given all the above it would seem the defendants can only rely on *Pierre* if their practice of delaying the revocation hearing for up to sixty days or more meets *Morrissey's* requirement that there be a prompt determination of probable cause. California's time frame for holding a hearing far exceeds the twenty-one days the *Pierre* panel thought sufficed.

Defendants provide no authority to support the proposition that an delay of sixty days or more is acceptable under *Morrissey* and *Gagnon*.[14] While some state courts have held that a preliminary hearing can occur within thirty days from the date of arrest, *see State v. Myers*, 86 Wash.2d 419, 545 P.2d 538 (1976) (en banc), it does not appear that any court has indicated that a delay of more than

be that the parolee is arrested at a place distant" from the place where the final revocation hearing will take place, "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 485, 92 S.Ct. 2593.

13. In *White* the Ninth Circuit held that the Parole Commission's refusal to allow plaintiff to confront and cross-examine adverse witnesses at his parole revocation hearing violated his right to due process. 925 F.2d at 290. While the case addressed the final revocation hearing, the *White* court examined *Morrissey*

in detail and concluded that "[t]o gather the facts necessary to make the two-part decision, the *Morrissey* court contemplated two hearings." *Id.* at 291

14. While *Pierre* opined that twenty-one days was not inappropriate, the Seventh Circuit has suggested in dicta that a ten day delay may violate *Morrissey*. *See Luther v. Molina*, 627 F.2d 71, 75, n. 3 (7th Cir.1980) ("Chief Justice Berger [in *Morrissey* ] seemed to be contemplating an almost immediate hearing.... It is possible that a ten day delay between detention and the preliminary hearing does not meet ... constitutional ... requirements.")

thirty days would be justifiable.[15] Indeed, even in *Ellis v. District of Columbia,* 84 F.3d 1413 (D.C.Cir.1996), the D.C. Circuit case on which defendants rely, the policy required the final revocation hearing to occur within thirty days from the date the Board was notified of the execution of a warrant, and regulations mandated a preliminary interview prior to the revocation hearing. *Id.* at 1420.[16]

Given all the above, the court concludes that even if a prompt unitary hearing would meet constitutional muster, a question I need not resolve, California's system allowing a delay of up to sixty days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination does not.[17]

## 2. The Court's Conclusion is Compelled by *Mathews*

Even assuming that *Morrissey* and *Gagnon* do not compel a prompt, distinct probable cause hearing, the court's conclusion above is necessitated upon application of the *Mathews* test. In order to protect a parolee's liberty interest, *Morrissey* requires procedures to insure not only that the State does not revoke parole without an adequate factual basis, but that parolees are not detained without some sort of assurance that there is probable cause to suspect a parole violation. The effect of detention itself, in its disruption of the juvenile parolee's family relationships, education, job, and life, is sufficiently significant to require such a procedure.

Moreover, it is clear that the informal probable cause determination procedures used for technical violations and when a parolee waives his appearance at the preliminary hearing for a law violation place a severe strain on an accurate fact-finding process. In both situations, the decision to hold a juvenile parolee in custody appears to be based solely on the determination of the parole officer and Supervising Parole Agent, who appear to rely solely on the

15. It may be of some interest that the United States Senate has noted relative to preliminary hearings in the federal parole system, that a two-day detainment could result in a loss of employment and severe disruption of the reintegration effort. *See* S.Rep. No. 369, 94th Cong., 1st Sess. 25–26 (1975), *reprinted in* 1976 U.S.C.C.A.N. 335, 347, *cited in Ellis v. District of Columbia,* 84 F.3d 1413, 1430 (D.C.Cir.1996).

16. The majority in *Ellis,* like *Pierre,* emphasized the flexible nature of due process and distinguished the facts in the District of Columbia from those in *Morrissey.* As the dissent pointed out, however, that reasoning fails to come to grips with *Gagnon's* explanation that two hearings are required by *Morrissey.* *See Ellis,* 84 F.3d at 1429–30 (Tatel, J., dissenting). While the majority relied on the footnote in *Gagnon* encouraging the States to devise "creative solutions" to cope with the practical difficulties of complying with *Morrissey, Ellis,* 84 F.3d at 1422 (citing *Gagnon,* 411 U.S. at 782, n. 5, 93 S.Ct. 1756), that

cannot reasonably be construed as an invitation to avoid the fundamental requirements of *Morrissey.* Whatever "creative solutions" or flexibility the Due Process Clause permits, it would appear that the Supreme Court has so far done nothing to indicate a retreat from its previous situation. Finally, for what it is worth, California's situation far more clearly resembles that found in *Morrissey* rather than the situation in the District of Columbia. In sum, then, with all due respect, I do not find *Ellis* helpful in resolving the issue before this court.

17. Plaintiffs further have argued that the hearing offered to juvenile parolees accused of law violations is illusory, because the process by which defendants obtain waivers of the parolees' appearance at the hearings is unlawful. The court observes that a waiver of a Constitutional right must be made knowingly and voluntarily, *Ostlund v. Bobb,* 825 F.2d 1371, 1373 (9th Cir.1987), but the court need not reach the question of whether defendants' waivers comply with this requirement.

evidence the parole officer has gathered to support the parole-hold. *See* Reyna Depo. 31:16–31:24, Exh. E, Laubach Decl. Such decisions contain few of the hallmarks of a reliable process as envisioned by the *Mathews* Court. Because the conclusion that a parole violation has occurred is one where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity are often critical to the decisionmaking process," the procedures currently in place for these groups of alleged parole violators seem only minimally reliable. *See Mathews*, 424 U.S. at 907, 96 S.Ct. 1099.

Finally, of course, the court must balance the social interest in protecting an individual's interest in remaining at large with the State's interest in protecting the public from parolees who have violated the conditions of their parole. In seeking to weigh that interest, however, the court is handicapped, since the defendants offer no evidence for the proposition that a delay of sixty days or more is necessary to insure protection of that interest. Moreover, while administrative inconvenience is a proper *Mathews* consideration, the inconvenience occasioned by a prompt probable cause hearing would not appear to be, in and of itself, a sufficient justification for the potentially catastrophic consequences of delay. Indeed, the Supreme Court seems to view with equanimity the inconvenience that *Morrissey* engendered. *See Gagnon*, 411 U.S. at 782, n. 5, 93 S.Ct. 1756 ("[s]ome amount of disruption inevitably attends any new constitutional ruling.").

For all the above reasons, the court concludes that whether viewed as compelled by *Morrissey* or the result of a *Mathews* balancing test, the current California parole revocation system violates the plaintiffs' due process rights.

## D. Injunctive Relief

■ Plaintiffs argue that because the due process violations at issue in this case are so similar to those in *Valdivia*, the *Valdivia* remedy should equally apply here. Specifically, the plaintiffs seek this court to order defendants to make probable cause determinations within ten calendar days of the juvenile parolee being taken into custody, as the court ordered for adult parolees in Valdivia. See order.

Such an order, however, is premature for the case at bar. Although the due process failures that occur for juvenile parolees are similar to those that the court identified in *Valdivia*, that does not necessarily require identical remedies. Indeed, the Supreme Court in both *Morrissey* and *Gagnon* noted that the solutions to due process violations in the parole revocation context depend on the demands of the particular circumstances. *See Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593; *Gagnon*, 411 U.S. at 782, n. 5, 93 S.Ct. 1756. The touchstone of any remedy is that the State meet the mandates of *Morrissey* and *Mathews* for guaranteeing due process in the juvenile parole revocation procedures. The plaintiffs have not shown that there is no genuine issue of material fact that the circumstances of juvenile parole revocation require that the probable cause determination be made within ten calendar days of the parolee being taken into custody.

## VI. CONCLUSION

Plaintiffs' motion for partial summary judgment is GRANTED as to their due process claim, but DENIED as to the

issue of injunctive relief.[18]

IT IS SO ORDERED.

18. Having said as much, the court does not mean to encourage delay. The defendants have thirty (30) days to tender a plan to meet constitutional standards.